[Crim. No. 4969.   Second Dist., Div. One.   Oct. 16, 1953.]

THE PEOPLE, Respondent, v. ALBERT J. TODD, Appellant.

Albert J. Todd, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondent.

DORAN, J.—Appellant was convicted, after a trial by jury, on six counts of an information, in reference to the forgery, etc., of certain alleged testamentary instruments of Charles Babonet, deceased. Counts I and IV charge the defendant with forgery of a certain handwritten will dated May 26, 1941, and of a typewritten will of the same date, and the uttering and publishing of the same with intent to cheat and defraud the estate. Counts II and V charge the crime of preparing false evidence in the form of said purported wills, in violation of section 134 of the Penal Code. Counts III and VI accuse the appellant of violations of section 115 of the Penal Code, in offering the alleged false instruments to be filed of record.

As stated in respondent's brief, "Appellant's brief is in propria persona and . . . appellant makes but one contention and that is that although the information charges six counts of violation of the Penal Code there was in fact only one offense and that he has been convicted six times for the same

offense, and as to Counts Two, Three, Four, Five and Six he has been placed in double jeopardy." Certain other matters raised by indirection in appellant's brief, will also be referred to.

■ Appellant's assertion that the convictions are based upon insufficient evidence is answered by referring to the well established rule that where there is substantial evidence in support of the judgment, an appellate court will not attempt to weigh or reevaluate such evidence. ■ In the case at bar the record discloses that the prosecution offered a chain of circumstantial evidence, coupled with the testimony of Clark Sellers, handwriting expert, which if believed by the jury, abundantly supports the verdict rendered. ■ Credibility of the witnesses and the weight of such evidence are questions of fact for the jury to determine, and in this case have been resolved against appellant's contentions.

Charles Babonet at the time of death was an elderly man, confined to a wheel chair, and lived in a small three-room house in the manner of a very poor man. An investigation of the house after Mr. Babonet's death revealed over $130,000 in currency hidden on the premises, and the total estate was valued at some $400,000. No will was found.

■ An article concerning Mr. Babonet's death appeared in the Sacramento Bee on August 17, 1950, at which time the defendant Todd was living in Sacramento. On August 25, 1950, the public administrator's office at Los Angeles received by mail the left hand portion of a torn writing, the envelope being postmarked Sacramento, California. On September 30, 1950, the defendant delivered to Attorney Lawrence at Sacramento, the right hand portion of the same writing which purported to be the last will of Charles Babonet. Attorney Lawrence delivered the latter portion to the public administrator's office in Los Angeles. Both portions of this document, referred to as the "burned will," were pasted together and filed in the probate court.

At the time the right hand portion was delivered to Lawrence, defendant stated that the burning away of the signature had occurred in a fire at Hotel Green in Sacramento on December 29, 1949. Attorney Lawrence was representing the defendant in reference to personal injuries and property damage sustained in such fire. The defendant stated that Mr. Babonet had torn the will in half, and that James Kelley, witness, Ferdinand Misner and Todd were together at that time. Attorney Lawrence testified that at that time no

other will was mentioned by Mr. Todd. On March 19, 1951, the defendant petitioned for probate of this will through Los Angeles attorneys who were later substituted out of the case.

On July 9, 1951, a second purported will, typewritten and witnessed, and the subject matter of Counts IV, V and VI, was sent by Todd to the probate court in Los Angeles, together with a folio of papers purporting to be a petition for probate and certain exemplars of handwriting. A third will, referred to as the green bordered will, also figured in the trial, but was never offered by Todd for probate. This green bordered will, procured by an investigator who saw the document protruding from a brief case carried by appellant's attorney, "figured in this case," states respondent's brief, "only as a link in the chain of circumstances tending to show that all of the wills were forgeries."

All of the purported witnesses to both wills were dead with the exception of Mrs. Virginia Pierce (Todd), appellant's present wife, who was not produced as a witness. There was testimony by Ruby Adams (Todd), who married appellant in 1934 and separated in 1934-1935, relating to the signing of a will in Breckenridge, Colorado, in 1933 by a man named Babonet. This witness had not seen Todd from 1935 until February, 1951, and in reference thereto respondent says: "Her testimony was therefore utterly valueless for the purpose of proving the authenticity" of the two wills which were dated May 26, 1941. Moreover, on cross-examination it appeared that certain details of this story had been suggested to the witness by Mr. Todd.

The testimony of Clark Sellers, handwriting expert, is to the effect that the purported signatures of Charles Babonet were forgeries, traced from a signature on a promissory note which appellant had delivered to the probate court as a true exemplar of Babonet's writing; further, that this promissory note signature from which the tracings had been made, was itself a forgery. According to Mr. Seller's testimony, neither the alleged signatures of the testator nor those of the witnesses were the genuine writings of those persons. Respondent's brief also calls attention to the fact that the purported witnesses lived in or near Kelsey, California, the residence of Todd, although Babonet lived in Los Angeles.

█ There is no merit in the appellant's contention that the convictions under six counts violate the rule against double jeopardy, and that in fact there was but one offense for

which appellant has been convicted six times. As hereinbefore indicated, the convictions relate to two separate forged wills. Not only was appellant properly charged with these two independent forgeries, but also with certain other separate crimes growing out of the same general subject matter but possessing different elements, and involving different sections of the Penal Code. There were two counts of forgery, two counts charging appellant with the crime of preparing false evidence in violation of section 134 of the Penal Code, and two other counts alleging violations of section 115 by offering to be filed of record the alleged false instruments.

As stated in respondent's brief, "the crime of forgery was complete in Counts I and IV when the wills were completed, provided there was an intent to defraud the estate of Babonet, without any intent to offer it for probate, or have it used as evidence. . . . The crime of offering the instrument for record, as prohibited by Penal Code Section 115, is an entirely *separate act* from that of forging it as prohibited by Section 470 of the Penal Code." There is nothing unusual in the situation here presented, involving forgery of two different testamentary instruments and other separate acts in connection therewith, denounced by the code sections referred to. Appellant was neither tried for the same offense six times, nor was there any violation of the rule against double jeopardy.

The record here presented shows nothing in support of appellant's assertions that there was a conspiracy between the officers of the law to secure a conviction, or that "the judge, and the district attorney showed a constant, striking, tenacious, aggressive disregard for defendant's unalterable, and inherent constitutional rights." On the contrary, it appears that the defendant was accorded a fair and impartial trial, that no prejudicial error occurred, and that the convictions are supported by competent and sufficient evidence.

The judgment is affirmed.

White, P. J., and Scott (Robert H.), J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1953.